UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MIGUEL & BARBARA AVILA,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SPOKANE SCHOOL DISTRICT #81,<br><br>                    Defendant. | No.  CV-10-0408-EFS<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER** |

## I.    <u>INTRODUCTION</u>

**THIS MATTER** came before the Court for an evidentiary hearing on May 19, 2014.  Present were Plaintiffs Miguel Avila and Barbara Avila ("Parents"), appearing pro se, and Gregory Stevens appearing on behalf of Defendant Spokane School District #81 ("the District").

The following witnesses testified in open court: Barbara Avila, Cori Valley, Barbara Tomkins, Paul Fawcett, and Nicole Herzog.  The Court received into evidence the following exhibits: Plaintiffs' Exhibits A, B, D, and 17.

Having fully considered the issues and legal authority presented by the parties, the testimony of the witnesses, the admitted exhibits, the arguments of both parties, the parties' briefs, the parties' proposed findings of fact and conclusion of law, the Administrative Record in Special Education Cause No. 2010-SE-0040, the Administrative

ORDER - 1

1   Record in Special Education Cause No. 2010-SE-0044, and the
2   Administrative Record on remand Cause Nos. 2010-SE-0040R and 2010-SE-
3   0044R, the Court now enters the following Findings of Fact,
4   Conclusions of Law, and Order.

5                   II.  **PROCEDURAL HISTORY**

6       Plaintiffs Miguel and Barbara Avila are the parents of G.A., a
7   special education student at an elementary school within the Spokane
8   School District.  On January 28, 2010, the District informed Parents
9   that the District proposed to initiate a reevaluation of G.A.  During
10  February and March 2010, the District conducted its reevaluation of
11  G.A, and it completed the reevaluation in April 2010.  On April 19,
12  2010, unhappy with the District's evaluation of G.A., Parents
13  requested an independent educational evaluation (IEE) of G.A. at the
14  District's expense.  Pursuant to WAC 392-172A-05005(2)(c)(i), on May
15  3, 2010, the District refused Parents' request and initiated a due
16  process hearing with the Washington State Office of the Superintendent
17  of Public Instruction (OSPI) to show that its evaluation was
18  sufficient.  The Office of Administrative Hearings (OAH) assigned
19  Cause No. 2010-SE-0044 to the District's due process request, and the
20  matter was promptly assigned to Administrative Law Judge (ALJ) David
21  G. Hansen.  Separately, on April 26, 2010, Parents also filed a
22  request for a due process hearing with OSPI, OAH assigned Cause No.
23  2010-SE-0040 to Parents' due process request, and the matter was
24  assigned to ALJ Hansen.

25      On June 2, 2010, by agreement of the parties, ALJ Hansen
26  consolidated both due process hearings.  On July 19, 2010, the first

day of the consolidated hearing, Parents began to assert what they perceived to be procedural violations of the Individuals with Disabilities Education Act (IDEA), primarily in the form of the District failing to provide Prior Written Notice (PWN). However, Parents had not specifically raised PWN as an issue at the prehearing conference, mistakenly believing that generally asserting the District violated IDEA was sufficient to put the District on notice of alleged PWN violations. The ALJ found that Parents had not sufficiently advised the Court or the District of the PWN violations and accordingly severed Parents' due process claims for a separate hearing.

On July 20 and 21, 2010, the hearing resumed solely on the issue of the District's due process hearing regarding the evaluation of G.A and whether an IEE was required at the District's expense. On August 25, 2010, in Cause No. 2010-SE-0044, ALJ Hansen issued his Findings of Fact, Conclusions of Law, and Order, holding that the District's "reevaluation of [G.A.] was appropriate and that [Parents] are not entitled to an [IEE] at the District's expense."

A subsequent due process hearing in Cause No. 2010-SE-0040 took place from October 25, 2010, through October 29, 2010, and from November 16, 2010, through November 18, 2010. On February 1, 2011, ALJ Hansen issued his Findings of Fact, Conclusions of Law, and Order, concluding Parents' claims lacked merit, the statute of limitations barred any allegation arising before April 26, 2008, the District had not violated the IDEA, and G.A. had not been denied a FAPE.

//

On November 19, 2010, Parents appealed the decision in OAH Cause No. 2010-SE-0044. The appeal was assigned to Cause No. CV-10-408-EFS. Separately, on April 27, 2011, Parents appealed the decision in OAH Cause No. 2010-SE-0040, which was assigned Cause No. CV-11-0165-EFS. On June 7, 2011, the Court consolidated both cases under Cause No. CV-10-0408-EFS. On December 5, 2011, Parents filed an Amended Complaint addressing both appeals.

On March 14, 2013, the Court issued a limited remand of the case to ALJ Hansen to consider Parents' new evaluation of G.A. and Parents' post-hearing brief which was not included in the administrative record. On May 24, 2014, ALJ Hansen issues a new Findings of Facts, Conclusion of Law, and Order addressing the remand. In OAH Cause No. 2010-SE-0040R[1] ALJ Hansen found that the post-hearing brief would have been submitted to him and therefore he must have reviewed the brief in reaching his findings, and accordingly did not have a new hearing on that matter. In OAH Cause No. 2010-SE-0044R, ALJ Hansen conducted an in-person hearing on May 17, 2013, to consider new evidence and take additional testimony. The ALJ found the March 7, 2012 assessment had no bearing on, nor affected the appropriateness of, the District's April 28, 2010 reevaluation.

On May 19, 2014, the consolidated cases came before this Court for an evidentiary hearing and final arguments.

//

//

/

---

[1] The notation "R" after the cause number distinguishes the remand proceeding from the original due process proceeding.

### III. **FINDINGS OF FACT**

The Court makes the following findings of fact:

1.  Plaintiffs Miguel and Barbara Avila are the parents of G.A., a special education student at an elementary school within the Spokane School District.

2.  On October 10, 2006, the District received a referral for special education evaluation from the Parents, in which the reason for referral was marked "Behavior."  AR40 at 671.[2] As the document shows, this initial evaluation was initiated by the Parents, not the District.

3.  In response, on October 12, 2006, the District mailed Parents a "Permission for Evaluation (Preschool)" form. AR40 at 669.  This form stated that G.A. may be eligible for special education services and requested Parents' permission to conduct an evaluation of G.A., which Parents signed in November of 2006, consenting to the evaluation.

4.  The initial evaluation was completed by Nicole Herzog, School Psychologist, on December 12, 2006, finding G.A. was not eligible for special education services.  AR40 at 674-680.  This evaluation was provided to Parents on January 3, 2007.  AR40 at 673.  On the same day, Barbara Avila signed the "Special Education Eligibility Determination" noting she was in agreement with the findings.  AR40 at 672.

//

---

[2] AR40 references the Administrative Record for cause number 2010-SE-0040, AR44 references the Administrative Record for cause number 2010-SE-0044, and AR44R references the Administrative Record for cause number 2010-SE-0044R.

5.   As of October 24, 2007, G.A. was not receiving special education services under the IDEA, but was instead receiving education services under Section 504 of the Americans with Disabilities Act.

6.   As of October 2007, Dr. Kristi Rice diagnosed G.A. with Asperger Syndrome. AR40 at 706. On December 12, 2007, Parents completed a "Child Find Referral" requesting a special education evaluation be conducted of G.A. AR40 at 701. On December 17, 2007, Parents again signed a "Permission For Evaluation" consenting to the District conducting another evaluation to determine G.A.'s eligibility for educational assistance. AR40 at 705. On April 14, 2008, Elisa Ferraro, School Psychologist, issued an initial evaluation of G.A, finding he qualified for special education under the eligibility category of Autism. AR40 at 681-691. On April 25, 2008, an Individualized Education Program (IEP) Team meeting was held and Barbara Avila signed a "Special Education Eligibility Determination" agreeing to the evaluation's recommendation of providing special designated instruction to improve written language skills and to improve social and behavior skills. AR40 at 693 & 2052.

7.   In advance of the April 25, 2008 meeting, the District provided a document labeled "Prior Written Notice" which informed Parents that the District was proposing to initiate an educational placement for special education

services, which would replace the 504 Plan.  AR40 at 1941.
This notice included a description of the action proposed,
an explanation of why the District proposed the action, a
description of each evaluation procedure, test, record, and
report used as the basis for the action, a description of
the options considered and rejected, and why that option
was rejected.  AR40 at 1941.

8.   Also starting in October 2007, G.A. was on a Behavior
     Intervention Plan.  AR40 at 832.  During December 2007,
     Parents participated in the preparation of a Section 504
     Student Accommodation Plan and agreed to the Student
     Accommodation Plan, which aimed to accommodate G.A.'s
     Asperger Syndrome and was later amended to include GA's
     Anxiety Disorder.  AR40 at 829-830.  Parents were then
     informed of their and G.A.'s rights under the 504 Plan.
     AR40 at 831.

9.   During May 2008, part of the 504 Plan included aversive
     therapy, which was removed at Parents' request, and
     replaced by a time-out procedure.  AR40 at 834.

10.  After the April 25, 2008 IEP team meeting, five subsequent
     meetings between Parents and the IEP team occurred: May 22,
     2008, October 7, 2008, October 9, 2008, November 17, 2008,
     and December 2, 2008.  After the May 22, 2008 meeting,
     Parents elected to review the IEP before deciding whether
     to sign it.  AR40 at 1943.  After the subsequent meetings
     between October 7, 2008, and November 17, 2008, the IEP was

not signed by Parents.  AR40 at 1950-1970.  As of December 4, 2008, Parents had not approved the IEP.  AR40 at 1971.

11.  By December 2008, the District determined G.A. was eligible for special education services under IDEA and an appropriate IEP was developed, placing G.A. in the District's ADAPT program.  Accordingly, G.A. was no longer eligible for the 504 Plan.  The District's December 9, 2008 letter to Parents advised them that the 504 Plan was being terminated in lieu of the IEP.  AR40 at 1076.

12.  Between December 2008 and February 2009, meetings and correspondence between the Parents and the District continued to discuss possible mediation of their disagreements on the IEP as well as the available options for providing an education to G.A.  AR40 at 1077-1082.

13.  On January 20, 2009, the District provided "Prior Written Notice," advising Parents of the District's refusal to initiate an Independent Educational Evaluation (IEE), believing the earlier April 2008 evaluation to be sufficiently appropriate.  AR40 at 1982.

14.  In February 2009, Parents requested that G.A. be provided an Instructional Assistant (IA) on a one-on-one basis.  On February 3, 2009, the IEP team met, discussing the ADAPT program and Parents' request for a one-on-one IA.  On February 5, 2009, the District provided both a letter, AR40 at 1984, and a Prior Written Notice, AR40 at 1985, advising Parents that the District was refusing to provide a one-on-

one IA, explaining an IA was already provided as part of ADAPT program and would meet G.A.'s educational needs.

15. The record shows that in early February 2009, Parents agreed to the IEP, and G.A. began attending ADAPT. AR40 at 788-792; 1151.

16. The ADAPT Program was specifically designed by the District for students with Asperger's Syndrome.

17. As of September 29, 2009, the record shows G.A. "had a very successful year in the program last year by all accounts from staff and school reports." AR40 at 1090.

18. From 2007 through 2009 G.A. had numerous behavior problems, some of which resulted in removal or suspension. At no time did the suspensions amount to ten (10) or more days. AR40 at 850; 1987-1991.

19. In the fall of 2009, G.A. was suspended on at least two occasions, over Parents' appeals. AR40 at 1987-2003.

20. On November 20, 2009, Parents made a request for a Manifestation Determination meeting. On November 25, 2009, the District sent Parents a document titled "Prior Written Notice" indicating that the District was refusing to initiate a Manifestation Determination meeting, stating one was not required because G.A. had not been suspended over ten days. AR40 at 2004.

21. On January 28, 2010, the District informed Parents in "Prior Written Notice" that the District was proposing to initiate a reevaluation of G.A. AR44 at 415. The notice

described the District's proposed action, the reason for proposing the action, a description of other options considered and rejected, the reasons for rejecting those options, and a description of each evaluation procedure, test, record, or report the District used or planned to use. AR44 at 415.

22. On January 28, 2010, the IEP Team, including Parents, completed a "Review for Reevaluation" giving permission for the District to conduct a reevaluation of G.A. to determine if he would continue to need special education and related services in the goal areas of writing skills and behavior and social skills. AR44 at 414.

23. During February and March 2010, the District conducted a reevaluation of G.A.  When changes in the proposed evaluation were suggested by the District, the District provided Parents a "Prior Written Notice." AR40 at 2008.

24. In early February 2010, Parents requested G.A. be tested in areas of executive functioning, dyslexia, dysgraphia, visual processing, auditory processing, sequential processing, processing speed, and conceptual processing. On April 12, 2010, the District advised Parents in a "Prior Written Notice" that the District was refusing to initiate Parents' requested testing because the District's April 2010 evaluation results provided adequate information to develop an appropriate IEP and BIP. AR40 at 2017.

//

**25.** On April 19, 2010, unhappy with the District's evaluation of G.A., Parents requested an IEE of G.A. at the District's expense. Pursuant to WAC 392-172A-05005(2)(c)(i), on May 3, 2010, the District refused Parents' request and initiated a due process hearing with the Washington State Office of the Superintendent of Public Instruction (OSPI) to show that its evaluation was sufficient. The Office of Administrative Hearings (OAH) assigned Cause No. 2010-SE-0044 to the District's due process request, and the matter was promptly assigned to Administrative Law Judge (ALJ) David G. Hansen. Separately, on April 26, 2010, Parents also filed a request for a due process hearing with OSPI, OAH assigned Cause No. 2010-SE-0040 to Parents' due process request, and the matter was assigned to ALJ Hansen.

**26.** The Court finds, that as early as November 18, 2006, Barbara Avila by signature acknowledged receipt of the District's Procedural Safeguards and Due Process Procedures. AR40 at 1908. The District's August 2005 version of the "Notice of Procedural Safeguards for Special Education Students and Their Families" provided notice of parents' abilities to participate, to receive written notice, to obtain an independent educational evaluation, to seek mediation, to request a due process hearing, to receive a manifestation determination meeting, to receive educational records, and where parents could go to receive additional information. AR40 at 1909-1916.

**27.**    The Court finds that for each document in the record titled "Prior Written Notice" the document informed Parents of the purpose of the document, the proposed or refused action, the reason for the proposed or refused action, a description of each evaluation procedure, assessment, record, or report used, a description of other options considered and rejected, reasons why those options were rejected, and listed as an attachment the "Procedural Safeguards and Due Process Procedures," which informed Parents of their rights and where Parents could obtain assistance in understanding the safeguards. *See, e.g.,* AR40 at 1941, 1982, 1985, 2004, 2006, 2008, 2017, 2019, 2022, and 2023; AR44 at 415.

### IV.    CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

**A.    IDEA Standard and Burden of Proof**

**1.**    Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Congress has also indicated that, to receive a FAPE, each eligible student is entitled to an IEP tailored to meet that child's unique needs. *See id.* § 1414(d)(1)(A)-(2)(A).

//

ORDER - 12

**2.**   An IEP is not a lesson plan and does not provide the specific methodology to be utilized, but is instead a broad overview or roadmap of a student's special education program, setting forth the present level of education performance, goals, objectives, and special services and staff to be provided. *See* WAC 392-172A-03090.   Under the IDEA, in order for an IEP to be appropriate it must be "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).   "An appropriate public education does not mean the absolutely best or potential-maximizing education for the individual child." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993) (citation omitted).   Rather, the state's obligation is to confer "some educational benefit" – "a basic floor of opportunity" through an "individually designed" program. *Rowley*, 458 U.S. at 200-201.

**3.**   In *Rowley*, the Supreme Court articulated the standard for whether a student has been provided appropriate special education services in terms of whether he or she had been provided a "free appropriate public education", or "FAPE," as follows:

> According to the definitions contained in the (Education for All Handicapped Children Act) a 'free appropriate public education' consists of education instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the

> instruction. Almost as a checklist for adequacy under the Act, the definition also requires that such instruction and services be provided at public expense and under public supervision, meet the State's educational standards, approximate the grade levels used in the state's regular education, and comport with the child's IEP. Thus, if personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items of the definitional checklist are satisfied, the child is receiving a 'free appropriate public education' as defined by the Act.

*Rowley*, 458 U.S. at 188-189.

4.    IDEA contains a number of provisions to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies." *Id.* § 1415(a). As part of those safeguards, any parent in Washington may obtain an impartial due process hearing by filing a complaint with OSPI if they believe their child's right to a FAPE has been denied. *See id.* § 1415(f),(h); WAC 392-172A-05025. Moreover, "[a]ny party aggrieved by the findings and decision [in the state administrative hearing] . . . [has] the right to bring a civil action . . . [which] may be brought in any . . . district court of the United States." 20 U.S.C. § 1415(i)(2)(A). Accordingly, this Court has jurisdiction over the parties and the IDEA matters in this action.

5.    When a civil action is brought pursuant to the IDEA, the Court "(i) shall receive the record of the administrative

proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on a preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C); *see also Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 890-91 (9th Cir. 1995) (citing former § 1415(e)(2), subsequently recodified as § 1415(i)(2)(C)). Regarding the Court's power to hear "additional evidence," the Ninth Circuit construes the term "additional" to mean "supplemental." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472-73 (9th Cir. 1993). District courts must admit additional evidence at a party's request, but only if the evidence is non-cumulative, relevant, and otherwise admissible under the Federal Rules of Evidence. *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist.*, 652 F.3d 999, 1004-05 (9th Cir. 2011). "[A] district court need not consider evidence that simply repeats or embellishes evidence taken at the administrative hearing, nor should it admit evidence that changes the character of the hearing from one of review to a trial *de novo*." *Id.* at 1004 (quoting *Ojai*, 4 F.3d at 1473) (internal quotation omitted).

**6.** In reviewing administrative decisions, the district court must give "due weight" to the state's judgments of education policy. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982);

*County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996). In recognition of the administrative agency's expertise, the court "must consider [the agency's] findings carefully and endeavor to respond to the hearing officer's resolution of each material issue." *County of San Diego*, 93 F.3d at 1466 (internal quotation marks omitted). Although the district court "is free to determine independently how much weight to give the administrative findings" the "courts are not permitted simply to ignore [them]." *Id.* (internal quotation marks omitted). A district court shall accord more deference to administrative agency findings that it considers "thorough and careful." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).

**7.** Procedural flaws in the IEP process do not always amount to the denial of a FAPE. *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992). If a procedural violation of the IDEA is found, the Court must determine whether that violation affected the substantive rights of the parent or child. *M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 652 (9th Cir. 2005). "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." *Target Range*, 960 F.2d at 1484 (citations omitted).

8.  In an action for judicial review of an administrative decision, the burden of persuasion rests with the party challenging the ALJ's decision, here the Plaintiffs. *Clyde K. v. Puyallup Sch. Dist.*, No. 3, 35 F.3d 1396, 1399 (9th Cir. 1994).

B.  **Parents' 504 Plan Allegations**

9.  Throughout both the proceedings before the ALJ and this Court, Parents make numerous allegations surrounding G.A.'s 504 Plan. However, as this matter comes before this Court under 20 U.S.C. § 1415(i)(2)(A), to the limited extent the ALJ made a finding it lacked jurisdiction to hear 504 allegations, AR40 at 76 ¶12, only the ALJ's decision as to that jurisdiction determination is before this Court.

10.  The Court, having reviewed the record, finds that the ALJ correctly determined it did not have jurisdiction to hear Parents' 504 related allegations.

C.  **Statute of Limitations**

11.  Under the IDEA, there is a two year statute of limitations to bring complaints. Specifically, 20 U.S.C. § 1415(f)(3)(C) provides that "[a] parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint." *See also* WAC 392-172A-05080. However, the statute provides for two exceptions in which this timeline does not apply to parents: "(a) Specific misrepresentations

by the school district that it had resolved the problem forming the basis of the due process hearing request; or (b) The school district withheld information from the parent that was required under this chapter to be provided to the parent." WAC 392-172A-05080.

12. The ALJ found that "the District made no misrepresentations to the Parents that they had resolved any problems which formed the basis for the multiple allegations made by Parents. . . [and] the District did not withhold any information from the Parents that the District was required to provide." AR40 at 75-76, ¶ 11. Having reviewed the record, this Court concurs.

13. Parents' due process complaint was made April 26, 2010. Accordingly, unless an exception is shown, the Court finds any alleged misconduct prior to April 26, 2008, was not timely raised by Parents. Before this Court, Parents assert eight separate reasons an exception to the statute of limitations was triggered.

14. First, Parents claim they never received prior written notice describing the evaluations the District proposed for the October 2006 initial evaluation or a copy of their procedural safeguards. ECF No. 110 at 2. However the record clearly shows Barbara Avila signed the "Permission for Evaluation" which acknowledged "I have received a copy of the 'Procedural Safeguards and Due Process Procedures'" and the eight-page procedural safeguards notice follows.

AR40 at 1908-1916.   Parents also argue that the document fails as a form of PWN.  ECF No. 110 at 2-3.  However, as the record demonstrates, AR40 at 671, and the ALJ correctly found, AR40 at 56 at ¶ 1b, the October 2006 evaluation was initiated by the Parents, not the District.  Washington law provides that prior written notice is only required when a school district proposes or refuses "to initiate or change the identification, evaluation, or educational placement of the student or the provision FAPE to the student."  WAC 392-172A-05010(1)(a),(b).  No notice is required when the initiated evaluation is at a parent's request. Accordingly, no PWN was necessary and therefore the Court finds no necessary information was withheld.

**15.**  Next, Parents argue the procedural safeguards notice was never explained to them.  ECF No. 110 at 4.  However, while Parents' cite to the OSPI Special Education Technical Assistance Paper, AR40 at 480-493, which advises district personnel "to be prepared to answer questions on procedural safeguards anytime a parent has questions," AR40 at 481, nothing in the IDEA requires the District to explain the safeguard notice.  *See* 20 U.S.C. § 1415(d) (setting forth the contents of the procedural safeguard notice and requiring only that a copy be available to the parents). Furthermore, when the school does take action, and PWN is required, even then the notice only need include "[s]ources for parents to contact to obtain assistance in

understanding the procedural safeguards and the contents of the notice."  WAC 392-172A-05010(2)(e).  Here, that was provided.  *See* AR40 at 1916.  As the District did not have an obligation under the law to explain the procedural safeguards, such an alleged failure, even if true, does not amount to withholding necessary information.

16. Next, Parents argue the District misrepresented the District's obligations under the IDEA to evaluate G.A. for autism in December 2006, refused to evaluate him for autism, and failed to provide PWN.  First, no PWN was required because the evaluation was requested by Parents.  AR40 at 671 ("Person making the Referral: Parent").  Next, the reasons for the referral were "Behavior" and that the "teacher wonders if he is showing slight signs of Autism."  AR40 at 671.  Furthermore, the "Special Education Eligibility Determination" which was made on January 3, 2007, clearly indicates that no eligible category was found and Plaintiff Barbara Avila signed under "I am in agreement" when provided the opportunity to sign "I am not in agreement."  AR40 at 672.  Accordingly, the Court finds no misrepresentation has been proven by Parents, as autism was at least a concern, no PWN was required, and that both the District and Ms. Avila agreed with the finding of no eligible category.

17. Next, Parents argue that in December 2007, the District refused to evaluate for autism and were not provided notice

as to why.  However, the record shows that on December 17, 2007, Barbara Avila signed another "Permission for Evaluation" which resulted in the April 14, 2008 finding of eligibility for special education services due to the eligibility criteria of autism.  AR40 at 681-706.  Parents were then informed of this in a "Prior Written Notice." AR40 at 1941.

18.  Finally, the remaining arguments by Parents address alleged failures of the District that occurred after April 26, 2008, so, even if true, those allegations could not bear on what the Parents knew or should have known prior to April 26, 2008, and could not establish a misrepresentation or withholding of information under WAC 392-172A-05080.

19.  Accordingly, the Court finds that the ALJ properly determined that the statute of limitations applies to any pre-April 26, 2008 allegation.  Accordingly, any failure, or alleged failure, on the part of the District in 2006 or 2007 to properly evaluate G.A. for autism was not timely raised, is barred by the statute of limitations, and therefore not before this Court.

D.  **Standard for Prior Written Notice**

20.  Parents challenge the ALJ's Conclusion of Law #13, Cause No. 2010-SE-0040, which provides:

> Addressing the remaining allegations of the District having failed to provide prior written notice the undersigned concludes that the District did provide Parents with adequate written notice complying with the regulations in

1      ISSUES, II, 15b, 19b, 21b, 23b, 27b, 30b, 33b,
       34b, 35b, 36b, 37b, 38b, and 39b.    It  is
2      particularly worth noting that in many of these
       allegations there was in fact a "Prior Written
3      Notice" provided to the Parents by the District
       and entered in to the record at hearing.    For
4      example, see ISSUES, II, 33b through 39b.

5      AR40 at 76 ¶ 13.    Parents maintain that "adequate written

6      notice" is not the appropriate standard.

7  **21.**  Washington law makes clear that prior written notice, when

8      required, must include:

9          (a)  A description of the action proposed or
           refused by the agency;
10         (b)  An explanation of why the agency proposes or
           refuses to take the action;
11         (c)  A description of each evaluation procedure,
           assessment, record, or report the agency used as
12         a basis for the proposed or refused action;
           (d)  A statement that the parents of a student
13         eligible or referred for special education have
           protection under the procedural safeguards and,
14         if this notice is not an initial referral for
           evaluation, the means by which a copy of a
15         description of the procedural safeguards can be
           obtained;
16         (e)  Sources for parents to contact to obtain
           assistance  in  understanding  the  procedural
17         safeguards and the contents of the notice;
           (f)  A description of other options that the IEP
18         team  considered  and  the  reasons  why  those
           options were rejected; and
19         (g)  A description of other factors that are
           relevant to the agency's proposal or refusal.
20
21     WAC 392-172A-05010(2).    Additionally, the notice must be

22     "[w]ritten in language understandable to the general
       
23     public."  WAC 392-172A-05010(3)(a)(i).

24  **22.**  While the ALJ may have included the modifier "adequate"

25     before the words "written notice" the Court finds the ALJ,

26     in discussing the PWNs "complying with the regulations"

applied the proper legal standard. Notably, in the immediately preceding paragraph the ALJ cited to the correct legal requirements for prior written notice, WAC 392-172A-05010. AR40 at 76 at ¶ 12. While the District may have argued before the ALJ for some form of adequate notice standard, the Court finds the ALJ did not apply such a standard in deciding this matter. Accordingly, the Court does not find the single appearance of the word "adequate" to indicate that the ALJ's findings regarding PWN were based upon anything other than complete and total compliance with all eight requirements of WAC 392-172A-05010.

**23.** Regardless, as addressed below, the Court finds Parents have failed to prove any of their PWN allegations, when reviewed under the applicable IDEA or 504 legal frameworks.

**E.   Prior Written Notice (PWN)**

**24.** Under the IDEA, school districts are required to give parents prior written notice whenever a district proposes or refuses "to initiate or change the identification, evaluation, or educational placement of the student or the provision of FAPE to the student." WAC 392-172A-05010(1)(a),(b) (detailing seven separate components of what a notice must contain); 20 U.S.C. § 1415 (b)(2) (same). Accordingly, no notice is required when the action taken is at a parent's request.

//

25.  In stark contrast to the extensive requirements of a prior written notice under the IDEA, under a 504 plan all that is required is some form of notice. *See* 34 C.F.R. § 104.36 (Requiring "a system of procedural safeguards that includes notice" but providing no further requirements for what the notice must contain).

26.  Parents' PWN challenge to the October 12, 2006 Initial Evaluation is barred by the statute of limitations. Alternatively, the Court would find no prior written notice was required for the October 12, 2006 Initial Evaluation as it was initiated at Parents' request. *See* AR40 at 671 ("Person making the Referral: Parent"); ECF No. 110 at 6 ("On October 10, 2006, Parents requested child find evaluation").

27.  Parents' PWN challenge to the December 17, 2007 evaluation is barred by the statute of limitations. Alternatively, the Court would find no prior written notice was required for the December 17, 2007 evaluation as it was initiated at Parents' request. *See* AR40 at 671 ("Person making the Referral: Barbara Avila").

28.  Parents' PWN challenge to the October 2007 implementation of aversive therapy is barred by the statute of limitations. Alternatively, the Court would find no prior written notice under WAC 392-172A-05010 was required because the aversive therapy was part of G.A.'s 504 Plan.

To the extent that a 504 plan would require notice, such notice was provided. *See* AR40 at 2056-2062.

29. Parents' PWN challenge to the December 24, 2007 implementation of a Section 504 Plan is barred by the statute of limitations. Alternatively, the Court would find no prior written notice under WAC 392-172A-05010 was required because it was a 504 Plan and not an IEP under the IDEA. To the extent that a 504 plan would require notice, such notice was provided. *See* AR40 at 829-831 (noting Parents' agreement to the 504 Plan and providing Parents' notice of their rights under 504).

30. Parents' PWN challenge to the removal of G.A.'s 504 Plan is barred by the statute of limitations. Alternatively, the Court would find no prior written notice under WAC 392-172A-05010 was required because it was a 504 Plan and not an IEP under the IDEA. To the extent that a 504 plan would require notice, such notice was provided. *See* AR40 at 1076.

31. Parents' PWN challenge, asserting the District must use PWN to consider the BEST program recommendations, is barred by the statute of limitations, as the BEST program recommendations were produced, and the initial IEP created, prior to April 26, 2008. Alternatively, even if the District did refuse to consider the BEST program recommendations, such would not have triggered a legal obligation to issue a prior written notice under WAC 392-

172A-05010.  The District, in refusing to take a course of
action, only need provide prior written notice when
refusing to initiate or change "the identification,
evaluation, or educational placement. . ."  WAC 392-172A-
05010.  Here, the BEST program recommendations were an
outside report, initiated by Parents and not the District,
which if unutilized in constructing the IEP would not be an
initiation or a change by the District, and therefore, no
prior written notice would be required.  By contrast, if
the District wanted to change the evaluation it was
proposing to conduct, then prior written notice would be
required.  For example, in February 2010, the District
wanted to change the G.A.'s academic assessment from the
Woodcock Johnson Test of Achievement (WJ-III) to the
Wechsler Individual Achievement Test (WIAT-II), and
consistent with the requirements of WAC 392-172A-05010, the
District provided prior written notice.  AR40 at 2008.
Such was not required with the BEST program
recommendations.  Regardless, the evaluation report, AR40
at 681-691, in which Parents agreed, AR40 at 693, clearly
indicated the BEST program's diagnoses were in fact
considered.  *See* AR40 at 690 (noting the "discharge
diagnosis from the BEST Program (Date: 3/17/08) with
Asperger's Syndrome and Anxiety NOS.  Medication was
recommended at BEST and parents have declined.").
Accordingly, the Court finds that Parents' BEST-program-

related allegations are barred by the statute of limitations and, in the alternative, have no basis in fact or law.

**32.** Parents' PWN challenge, arguing the District failed to provide PWN addressing all of Parents' concerns from each of the May, October, November, and December 2008 meetings discussing the proposed IEP, is without merit. As previously discussed, when a district refuses to take action, PWN is only required if that refusal is regarding the "identification, evaluation, or educational placement." WAC 392-172A-05010. While throughout the 2008 meetings Parents raised concerns and questions regarding the IEP, nothing in the record suggests that the District refused to identify G.A. as eligible for an IEP, change which evaluation the District was performing without notice, or were refusing a change in education placement. The IEP at issue at all times identified G.A. as eligible for special education services and placed him in the ADAPT program. While Parents maintain "not one single documentation of Parent concerns, no document of Parent's refusal to sign their IEP's . . ." exists, ECF No. 110 at 26, such desired documentation does not implicate the requirements of PWN in WAC 392-172A-05010.

**33.** Parents' PWN challenge, arguing the District had to provide PWN regarding the August 2008 accommodation recommendations from the private occupational therapist, is without merit.

As with the BEST program recommendations discussed previously, the occupational therapist recommendations do no implicate either an initiation or a change to "the identification, evaluation, or educational placement of the student or the provision of FAPE to the student." WAC 392-172A-05010. Accordingly, the Court finds the District had no obligation to provide PWN under WAC 392-172A-05010.

34. Parents' PWN challenges, alleging the District failed to provide proper PWN when the District rejected their request to keep a one-on-one aid, to have related services for the school psychologist, to have speech as a related service, and to have G.A. evaluated for Dyslexia and Dysgraphia, are entirely without merit. The record contains two PWNs, both labeled "Prior Written Notice" in which the document addresses each of the required components outlined in WAC 392-172A-05010. *See* AR40 at 1985 (rejected a one-on-one IA); AR40 at 2017 (refusing to initiate Parents' requested evaluations and related services).

35. Ultimately, Parents' raised numerous alleged PWN violations before both the ALJ and this Court. This Court finds no such violations, as either no PWN was required or PWN was provided. Even if a procedural violation occurred, the Court finds Parents have failed to prove by a preponderance of evidence that the procedural inadequacies amounted to a denial of FAPE, as Parents have failed to show any procedural inadequacies impeded G.A's right to a FAPE,

significantly impeded the Parents' opportunity to participate in the decision-making process regarding the provision of a FAPE, or caused a deprivation of educational benefits to G.A. *See* 20 U.S.C. § 1415(f)(3)(E)(ii); *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992). Accordingly, all of Parents' PWN allegations are dismissed.

**F.    Manifestation Determination**

36. Parents assert that the District could perform a manifestation determination "anytime a child exhibits maladaptive behaviors." ECF No. 110 at 31. However, as the ALJ correctly concluded, AR40 at 77 ¶ 18, the law in Washington is quite clear on the requirements upon the school.

37. Under both WAC 392-172A-05155 and 392-172A-05145 a manifestation determination is not required until ten school days have been missed either consecutively or in a pattern of removals. *See* WAC 392-172A-0515(1) ("(a) The removal is for more than ten consecutive school days; or (b) The student has been subjected to a series of removals that constitute a pattern: (i) Because the series of removals total more than ten school days in a school year; (ii) Because the student's behavior is substantially similar to the student's behavior in previous incidents that resulted in the series of removals; and (iii) Because of such additional factors as the length of each removal,

the total amount of time the student has been removed, and the proximity of the removals to one another."). *See also* WAC 392-172A-05145(2)("School personnel may remove a student eligible for special education who violates a code of student conduct. . . for not more than ten consecutive school days. . . and for additional removals of not more than ten consecutive school days in that same school year for separate incidents of misconduct as long as those removals do not constitute a change of placement under WAC 392-172A-05155.") It is not until "[a]fter a student has been removed from his or her current placement for ten school days in the same school year" that the school district "must provide services." WAC 392-172A-05145(2)(b).

**38.** Here, G.A. was suspended for a total of only six school days across the 2007-2008 and 2008-2009 school years. Accordingly, while Parents clearly wanted the District to perform a manifestation determination, and Parents are correct that "[s]chools can perform a [manifestation determination] *anytime* a child exhibits maladaptive behavior," ECF No. 110 at 31 (emphasis in original), the law did not *require* the District to perform a manifestation determination until a student is suspended for ten school days in a single year. Accordingly, the District had no legal obligation to provide a manifestation determination

of G.A., and therefore Parents' manifestation determination claims must be dismissed.

**G.    2006 and 2007 Evaluations**

39.    As the Court previously found, any allegations regarding conduct predating April 26, 2008, is barred by the statute of limitations.    Accordingly, the Court finds all of Parents' allegations regarding the 2006 and 2007 evaluations are barred by the statute of limitations.

**H.    2010 Reevaluation and Sufficiency of the 2010 IEP**

40.    The purpose of an evaluation under the IDEA is to determine whether a child has a disability, and the nature and extent of the special education and related services that the child needs.  34 C.F.R. § 300.15; WAC 392-172A-01070.

41.    Reevaluations under the IDEA are to determine a student's continuing eligibility for special education services and related services, or the nature of those services, and are to be conducted in accordance with WAC 392-172A-03020 through WAC 392-172A-03080; WAC 392-172A-03015.

42.    The evaluation and reevaluation procedures are detailed at WAC 392-172A-03020.    A school district must, among other things, employ a "group of qualified professionals" who in turn utilize a "variety of assessment tools and strategies to gather relevant functional, developmental, and academic information" about a student.    WAC 392-172A-03020(2).    A district cannot "use any single measure or assessment as the sole criterion . . . for determining an appropriate

educational program for the student." WAC 392-172A-03020(2)(b). Any assessments or evaluation materials used to assess a student must be "used for the purposes for which the assessments or measures are valid and reliable." WAC 392-172A-03020(3)(a)(iii). Assessments and evaluation materials are to be administered by "trained and knowledgeable personnel" and administered "in accordance with any instructions provided by the producer of the assessments." WAC 392-172A-03020(3)(i)(iv)(v). Assessment and evaluation material is to be "tailored to assess specific areas of educational need." WAC 392-172A-03020(3)(b). Lastly, in evaluating a student to determine continued eligibility for special education services a district shall insure that "the evaluation is sufficiently comprehensive to identify all of the student's special education and related services needs, whether or not commonly linked to the disability category in which the student has been classified." WAC 392-172A-03020(3)(g).

**43.** Part of the reevaluation process requires the IEP team to review existing evaluation data including "[e]valuations and information provided by the parents of the student; current classroom-based, local, or state assessments and classroom-based observations; and observations by teachers and related services providers." WAC 392-172A-03025(1). Having conducted such a review, and with information provided by the parents, the IEP team makes a determination

in the case of a reevaluation, of "whether the student continues to meet eligibility, and whether the educational needs of the student including any additions or modifications to the special education and related services are needed to enable the student to meet the measurable annual goals set out in the IEP of the student, as appropriate, in the general education curriculum." WAC 392-172A-03025(2)(a)(ii).

44. The parents of a student who is eligible for special education services has the right to request an Independent Educational Evaluation (IEE), either at their own expense, or at the expense of the district. WAC 392-172A-05005(1). Under certain circumstances a parent also has the right to an IEE at public expense if the parent disagrees with an evaluation conducted or obtained by a district. WAC 392-172A-05005(2). Should a parent request an IEE at public expense, a district must do one of two things, either initiate a due process hearing to show that its "evaluation is appropriate" or ensure that an IEE is provided at public expense without unnecessary delay. WAC 392-172A-05005(c). If at a due process hearing a district establishes that its evaluation is appropriate, the parent still has the right to obtain an IEE but not at District expense. WAC 392-172A-05005(3).

45. The Court finds the ALJ's considerations addressing the 2010 reevaluation and 2010 IEP to have been thorough and

careful, and therefore, accords the ALJ's findings
substantial deference.  Having given due weight to the
state's judgments of education policy, the Court finds as
follows.

**46.**  The Court finds that Parents did not prove by a
preponderance of evidence that the District's April 2010
Reevaluation of G.A. was inappropriate, nor that a
neuropsychological examination at public expense, by a
provider of Parents' choice, was necessary for the
Reevaluation to be appropriate.

**47.**  Additionally, the Court finds that Parents did not prove by
a preponderance of evidence that the April 2010 IEP failed
to provide G.A. with a FAPE.  To the contrary, the Court
finds that a preponderance of the evidence affirmatively
establishes that the April 2010 IEP was in fact reasonably
calculated to provide GA with meaningful educational
benefit through an individually designed program, and that
it did in fact provide G.A. with such benefit and
opportunity through an individually designed program.  The
April 2010 IEP provided appropriate behavioral
interventions, supports, and strategies, including a
Behavioral Intervention Plan (BIP) and a Functional
Behavior Assessment (FBA).

**48.**  Finally, the Court finds a preponderance of the evidence
affirmatively establishes that the April 2010 IEP provided
G.A. appropriate accommodations, which included: shortened

assignments; material read orally; extra time in completing
assignments; access to scheduled breaks every one to one-
and-a-half hours; additional breaks when determined
appropriate by staff; extra time on tests and quizzes;
breaks during work, between tasks, during testing;
providing individualized and small group instruction;
modify, repeat, model directions; taking tests in separate
locations; utilizing oral responses to assignments and
tests; allowing the Student to dictate to a scribe;
allowing the use of a tape recorder; a behavior plan or
contract; and sensory regulation items available as needed;
that the District would have an assistive technology
specialist determine Student's needs with staff and
Parents; and in addition to these accommodations and at
Parents' request, the District prepared a nearly two-page,
type-written, single-spaced list of accommodations to be
provided to the Student in most settings throughout the
school day.

**49.** Accordingly, Parents' claims regarding the 2010
Reevaluation, 2010 IEP, and need for an IEE at public
expense are dismissed.

**I.   Impartial Hearing before an Impartial Hearing Officer**

**50.** Parents raise a number of issues which they maintain denied
them a fair and impartial hearing before an impartial
hearing officer, including 1) gaps in the audio recordings
of the administrative hearing, 2) Parents' post-hearing

brief was not referenced in the final decision or the official record, 3) the ALJ refused to admit Parents' additional evidence, 4) the ALJ did not acknowledged Parents' request for judicial notice, and 5) the ALJ refused to hear evidence of the District's routine habits and procedures.  ECF No. 110 at 35-36 (also noting Parents' withdrawal of objections to credibility determinations).

51.  The IDEA confers on disabled children and their parents the right to have complaints resolved at a full adversarial hearing before an impartial hearing officer, under the auspices of the relevant state or local educational agency, in connection with the "identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(1).

52.  First, the Court having reviewed the record, finds no error in the ALJ's evidentiary determinations including refusing to admit evidence not submitted consistent with the five-day requirement of WAC 392-172A-05100, the ALJ's refusal to admit routine habit and procedures evidence, and the ALJ's decision not to take judicial notice at Parents' request.

53.  Additionally, as this matter was remanded to the ALJ for consideration of Parents' post-hearing brief, which the ALJ found it had considered at the time of its original decision, ECF 70 at 5, Parents' concern that it was not originally in the certified official record is moot.  While

1    Parents' object that it was not referenced in the final

2    decision of the ALJ, Parents have failed to prove how the

3    mere failure of their brief to be included as a citation in

4    the ALJs decision evidence in any way that they did not

5    receive a fair and impartial hearing.  The Court finds no

6    legal requirement, nor do the Parents cite to one, that the

7    ALJ must cite to every document filed by a party over the

8    course of the entire administrative hearing proceedings.

9    54.   Finally, while there may have been technical difficulties

10       with the audio recordings of the administrative hearing

11       proceedings, full transcripts were available, and

12       regardless, any failure of the audio recordings or alleged

13       inability on Parents' part to cite to a written transcript

14       in drafting their post-hearing brief, did not deny Parents

15       the ability over two separate administrative proceedings to

16       present to, and then receive consideration from, a fair and

17       impartial hearing officer.  Specifically, the ALJ heard and

18       fully considered the testimony of Ms. Herzog.  Accordingly,

19       even if true, Parents' concern with their ability to cite

20       her testimony did not deny them a fair and impartial

21       hearing.

22    55.   Ultimately, the Court finds that Parents have failed to

23       prove by a preponderance of the evidence that they failed

24       to receive a fair and impartial hearing before an impartial

25       hearing officer.  The Court finds nothing in the record, or

26       the arguments presented by Parents, that even suggests the

ALJ's impartiality was in any way questionable, or that the extensive hearings conducted were in anyway unfair.

**J.   Conclusion**

**56.**   In conclusion, the IDEA does not require providing a forum for maximizing effort but instead only requires a floor for opportunity. *See Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993) ("An appropriate public education does not mean the absolute best or potential-maximizing education for the individual child."); *Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200-201 (1982) (The state's obligation is to confer "some education benefit" or "a basic floor of opportunity" through an individualized program).  The Court finds, having reviewed the extensive record before it, that the District met this obligation.

**57.**   All arguments made by Parents have been considered. Arguments that are not specifically addressed have been duly considered by the Court, but the Court finds they have not been proven by Parents.

//

//

//

//

//

//

/

V.    <u>ORDER</u>

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.**

2.    The Clerk's Office is directed to enter **JUDGMENT** in Defendant's favor with prejudice.

3.    The Clerk's Office shall **CLOSE** this file.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel and Plaintiffs.

**DATED** this   3rd   day of November 2014.


              s/Edward F. Shea
              _____
              EDWARD F. SHEA
              Senior United States District Judge

Q:\EFS\Civil\2010\0408.fofcol.lc2.docx

ORDER – 39