FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 29, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MIGUEL & BARBARA AVILA,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SPOKANE SCHOOL DISTRICT #81,<br><br>                    Defendant. | No. CV-10-00408-EFS<br><br>**AMENDED FINDINGS OF FACT,<br>CONCLUSIONS OF LAW, AND ORDER** |

## I.   Introduction

This matter is before the Court on remand from the Court of Appeals for the Ninth Circuit. On November 13, 2014, this Court issued its Findings of Fact, Conclusions of Law, and Order and directed the Clerk's Office to enter judgment for Defendant Spokane School District. ECF No. 116. On appeal, the Court of Appeals affirmed in part, reversed in part, and remanded to the Court for additional proceedings on two of the Avilas' substantive claims. *See* ECF Nos. 130 & 131. Specifically, the Ninth Circuit instructed the Court to make findings as to when the Avilas "knew or should have known about the alleged action[s] that form[] the basis" of their complaint and to apply its articulation of the relevant statute of limitations. *See* ECF No. 131 at 19 (quoting 20 U.S.C. § 1415(f)(3)(C)).

/

AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER — 1

The Court has fully considered the issues and legal authority presented by the parties, the testimony of the witnesses, the admitted exhibits, the arguments of both parties, the parties' briefs, the parties' proposed findings of fact and conclusion of law, the Administrative Record in Special Education Cause No. 2010-SE-0040, the Administrative Record in Special Education Cause No. 2010-SE-0044, and the Administrative Record on remand Cause Nos. 2010-SE-0040R and 2010-SE-0044R.

As set out below, the Court amends its prior Order, ECF No. 116, but nonetheless holds that the Avilas' remaining claims are barred by the IDEA's statute of limitations.[1] *See* 20 U.S.C. § 1415(f)(3)(C). Accordingly, the claims are dismissed with prejudice, and the Clerk's Office is directed to enter judgment for the Spokane School District.

## II.   **Procedural History**

Plaintiffs Miguel and Barbara Avila (the Avilas) are the parents of G.A., a special-education student at an elementary school within the Spokane School District. On January 28, 2010, the District informed the Avilas that the District proposed to initiate a reevaluation of G.A.'s continued need for special-education services. During February and March 2010, the District conducted its reevaluation of G.A., completing it in April 2010. The Avilas were unhappy with the District's evaluation of G.A., and on April 19, 2010, they requested an independent educational evaluation (IEE) of G.A. at the District's expense. On May 3, 2010, pursuant to WAC 392-172A-05005(2)(c)(i), the District refused the

---

[1] The Court adopts and applies the Court of Appeals for the Ninth Circuit's articulation of the IDEA's statute of limitations in Conclusions of Law 11 through 22 below.

Avilas' request and initiated a due process hearing with the Washington State Office of the Superintendent of Public Instruction (OSPI) to show that its evaluation was sufficient. The state Office of Administrative Hearings (OAH) assigned Cause No. 2010-SE-0044 to the District's due process request, and the matter was promptly assigned to Administrative Law Judge (ALJ) David G. Hansen. Separately, on April 26, 2010, the Avilas also filed a request for a due process hearing with the OSPI, the OAH assigned Cause No. 2010-SE-0040 to the due process request, and the matter was assigned to ALJ Hansen.

On June 2, 2010, by agreement of the parties, ALJ Hansen consolidated both due process hearings. On July 19, 2010, the first day of the consolidated hearing, the Avilas began asserting what they perceived to be procedural violations of the Individuals with Disabilities Education Act (IDEA), primarily in the form of the District failing to provide Prior Written Notice (PWN). However, the Avilas had not specifically raised PWN as an issue at the prehearing conference, mistakenly believing that generally asserting the District violated the IDEA was sufficient to put the District on notice of alleged PWN violations. The ALJ found that the Avilas had not sufficiently advised the Court or the District of the alleged PWN violations and accordingly severed the Avilas' due process claims for a separate hearing.

On July 20 and 21, 2010, the due process hearing resumed solely regarding the 2010 evaluation of G.A. and whether an IEE was required at the District's expense. On August 25, 2010, in Cause No. 2010-SE-0044, ALJ Hansen issued his Findings of Fact, Conclusions of Law, and Order, holding that the District's "reevaluation of [G.A.] was

appropriate and that [the Avilas] are not entitled to an [IEE] at the District's expense." AR44 at 27.[2]

A subsequent due process hearing in Cause No. 2010-SE-0040 took place from October 25, 2010, through October 29, 2010, and from November 16, 2010, through November 18, 2010. On February 1, 2011, ALJ Hansen issued his Findings of Fact, Conclusions of Law, and Order, in which he made the following conclusions: (1) the Avilas' claims lacked merit; (2) the statute of limitations barred any allegation arising before April 26, 2008; (3) the District had not violated the IDEA; and (4) G.A. had not been denied a free appropriate public education (FAPE). *See* AR40 at 46–79.

On November 19, 2010, the Avilas appealed the decision in OAH Cause No. 2010-SE-0044. The appeal was assigned to Cause No. CV-10-00408-EFS. Separately, on April 27, 2011, they appealed the decision in OAH Cause No. 2010-SE-0040, which was assigned Cause No. CV-11-00165-EFS. On June 7, 2011, this Court consolidated both cases under Cause No. CV-10-0408-EFS. On December 5, 2011, the Avilas filed an Amended Complaint addressing both appeals.

On March 14, 2013, the Court issued a limited remand of the case to ALJ Hansen to consider the Avilas' new evaluation of G.A. and their post-hearing brief, which had not been included in the administrative record. On May 24, 2014, ALJ Hansen issues a new Findings of Facts, Conclusion of Law, and Order addressing the remand. In OAH Cause No.

---

[2] AR40 references the Administrative Record for cause number 2010-SE-0040, AR44 references the Administrative Record for cause number 2010-SE-0044, and AR44R references the Administrative Record for cause number 2010-SE-0044R.

2010-SE-0040R[3] ALJ Hansen found that the post-hearing brief would have been submitted to him and therefore he must have reviewed the brief in reaching his findings. Accordingly, he did not hold a new hearing on that matter. However, in OAH Cause No. 2010-SE-0044R, ALJ Hansen conducted an in-person hearing on May 17, 2013, to consider new evidence and take additional testimony. Still, the ALJ found the March 7, 2012 assessment had no bearing on, nor affected the appropriateness of, the District's April 28, 2010 reevaluation.

On May 19, 2014, the consolidated cases came back to this Court for an evidentiary hearing and final arguments. ECF No. 115. The following witnesses testified in open court: Barbara Avila, Cori Valley, Barbara Tomkins, Paul Fawcett, and Nicole Herzog. On November 13, 2014, the Court issued its Findings of Fact, Conclusions of Law, and Order, dismissing the Avilas' claims. ECF No. 116.

The Avilas appealed, and the Court of Appeals for the Ninth Circuit affirmed this Court's decision in part and reversed it in part. *See* ECF Nos. 130 & 131. Specifically, it affirmed this Court's conclusion that the District's 2010 reevaluation of G.A. was appropriate and did not merit an independent educational evaluation at the District's expense. *See* ECF No. 130 at 2. It reversed this Court's application of the IDEA's statute of limitations and subsequent conclusion that the Avilas' pre-April 2008 claims were time-barred. ECF No. 131 at 5. The Court of Appeals further clarified that the two-year statute of limitations is governed by the "discovery rule." *See* ECF No. 131 at 18. On remand, it

---

[3] The notation "R" after the cause number distinguishes the remand proceeding from the original due process proceeding.

instructed the Court to make findings as to when the Avilas "knew or should have known" about the alleged actions underlying their claim and apply the statute of limitations accordingly. *See* ECF No. 131 at 19; 20 U.S.C. § 1415(f)(3)(C).

Although the Avilas seemingly wish to reassert many of their prior claims, the Court of Appeals expressly characterized the Avilas' surviving claims as follows: (1) that the District allegedly denied G.A. a FAPE by failing to identify him as a child with a disability in 2006; and (2) that the District allegedly denied him a FAPE by failing to assess his suspected disability in 2006 and 2007. ECF No. 131 at 5-6.[4]

### III. <u>Findings of Fact</u>[5]

The Court makes the following findings of fact:

1.  Plaintiffs Miguel and Barbara Avila are the parents of G.A., a special-education student at an elementary school within the Spokane School District.

2.  On October 10, 2006, the District received a referral for special-education evaluation from the Avilas, in which the reason for referral was marked "Behavior." AR40 at 671. As the document shows, this initial evaluation was initiated by the Avilas, not the District.

3.  In response, on October 12, 2006, the District mailed the Avilas a "Permission for Evaluation (Preschool)" form. AR40

---

[4] As explained in the Court's prior order, the Court has no jurisdiction to consider any other issues. ECF No. 143 at 3 (citing *United States v. Petty*, 80 F.3d 1384, 1388 (9th Cir. 1996) ("[W]here the scope of remand is 'expressly limited' . . . , the district court is without authority to revisit other issues.").

[5] Because the Court of Appeals remanded only on the aforementioned issues, the Court restates its prior undisturbed findings for ease of reference.

at 669. This form stated that G.A. may be eligible for special-education services and requested the Avilas' permission to conduct an evaluation of G.A., which they signed in November of 2006, consenting to the evaluation.

4.   The initial evaluation was completed by Nicole Herzog, School Psychologist, on December 12, 2006, finding G.A. was not eligible for special-education services. AR40 at 674-80. This evaluation was provided to the Avilas on January 3, 2007. AR40 at 673. On the same day, Barbara Avila signed the "Special Education Eligibility Determination" noting she was in agreement with the findings. AR40 at 672.

5.   As of October 24, 2007, G.A. was not receiving special-education services under the IDEA but was instead receiving education services under Section 504 of the Americans with Disabilities Act.

6.   As of October 2007, Dr. Kristi Rice diagnosed G.A. with Asperger's Syndrome. AR40 at 706. On December 12, 2007, the Avilas completed a "Child Find Referral," requesting the District conduct a special-education evaluation of G.A. AR40 at 701. On December 17, 2007, the Avilas again signed a "Permission For Evaluation" consenting to the District conducting another evaluation to determine G.A.'s eligibility for educational assistance. AR40 at 705. On April 14, 2008, Elisa Ferraro, School Psychologist, issued an initial evaluation of G.A., finding he qualified for special-education under the eligibility category of Autism. AR40 at

681–91. On April 25, 2008, an Individualized Education Program (IEP) Team meeting was held and Barbara Avila signed a "Special Education Eligibility Determination" agreeing to the evaluation's recommendation of providing special designated instruction to improve written language skills and to improve social and behavior skills. AR40 at 693, 2052.

7.    In advance of the April 25, 2008 meeting, the District provided a document labeled "Prior Written Notice," which informed the Avilas that the District was proposing to initiate an educational placement for special-education services and would replace the 504 Plan. AR40 at 1941. This notice included a description of the action proposed; an explanation of why the District proposed the action; a description of each evaluation procedure, test, record, and report used as the basis for the action; a description of the options considered and rejected; and why that option was rejected. AR40 at 1941.

8.    Also starting in October 2007, G.A. was on a Behavior Intervention Plan. AR40 at 832. During December 2007, the Avilas participated in the preparation of a Section 504 Student Accommodation Plan and agreed to the Student Accommodation Plan, which aimed to accommodate G.A.'s Asperger's Syndrome and was later amended to include G.A.'s Anxiety Disorder. AR40 at 829–30. The Avilas were then informed of their and G.A.'s rights under the 504 Plan. AR40 at 831.

**9.**     During May 2008, part of the 504 Plan included aversive therapy, which was removed at the Avilas' request and replaced by a time-out procedure. AR40 at 834.

**10.**    After the April 25, 2008 IEP team meeting, five subsequent meetings between the Avilas and the IEP team occurred on the following dates: May 22, 2008; October 7, 2008; October 9, 2008; November 17, 2008; and December 2, 2008. After the May 22, 2008 meeting, the Avilas elected to review the IEP before deciding whether to sign it. AR40 at 1943. After the subsequent meetings between October 7, 2008, and November 17, 2008, the Avilas did not sign the IEP. AR40 at 1950-70. As of December 4, 2008, they still had not approved the IEP. AR40 at 1971.

**11.**    By December 2008, the District determined G.A. was eligible for special-education services under the IDEA and an appropriate IEP was developed, placing G.A. in the District's ADAPT program. Accordingly, G.A. was no longer eligible for the 504 Plan. The District's December 9, 2008 letter to the Avilas advised them that the 504 Plan was being terminated and replaced with the IEP. AR40 at 1076.

**12.**    Between December 2008 and February 2009, the Avilas and the District met and corresponded, continuing to discuss possible mediation of their disagreements on the IEP as well as the available options for providing an education to G.A. AR40 at 1077-82.

**13.** On January 20, 2009, the District provided a "Prior Written Notice," advising the Avilas of the District's refusal to initiate an IEE because it believed the earlier April 2008 evaluation was sufficient. AR40 at 1982.

**14.** In February 2009, the Avilas requested that G.A. be provided an Instructional Assistant (IA) on a one-on-one basis. On February 3, 2009, the IEP team met, discussing the ADAPT program and the Avilas' request for a one-on-one IA. On February 5, 2009, the District provided both a letter, AR40 at 1984, and a Prior Written Notice, AR40 at 1985, advising the Avilas that the District was refusing to provide a one-on-one IA, explaining an IA was already provided as part of the ADAPT program and would meet G.A.'s educational needs.

**15.** The record shows that in early February 2009, the Avilas agreed to the IEP, and G.A. began attending the ADAPT program. AR40 at 788–92; 1151.

**16.** The ADAPT program was specifically designed by the District for students with Asperger's Syndrome.

**17.** As of September 29, 2009, the record shows G.A. "had a very successful year in the program last year by all accounts from staff and school reports." AR40 at 1090.

**18.** From 2007 through 2009, G.A. had numerous behavior problems, some of which resulted in removal or suspension. At no time did the suspensions amount to ten or more days. AR40 at 850; 1987–91.

**19.** In the fall of 2009, G.A. was suspended on at least two occasions, over the Avilas' appeals. AR40 at 1987–2003.

**20.** On November 20, 2009, the Avilas made a request for a Manifestation Determination meeting. On November 25, 2009, the District sent them a document titled "Prior Written Notice," indicating that the District was refusing to initiate a Manifestation Determination meeting, and explaining that one was not required because G.A. had not been suspended over ten days. AR40 at 2004.

**21.** On January 28, 2010, the District informed the Avilas in another document titled "Prior Written Notice" that the District was proposing to initiate a reevaluation of G.A. AR44 at 415. The notice described the District's proposed action, the reason for proposing the action, a description of other options considered and rejected, the reasons for rejecting those options, and a description of each evaluation procedure, test, record, or report the District used or planned to use. AR44 at 415.

**22.** On January 28, 2010, the IEP Team, including the Avilas, completed a "Review for Reevaluation," giving permission for the District to conduct a reevaluation of G.A. to determine if he would continue to need special-education and related services in the goal areas of writing skills, behavior, and social skills. AR44 at 414.

**23.** During February and March 2010, the District conducted a reevaluation of G.A. When changes in the proposed evaluation

were suggested by the District, the District provided the Avilas a "Prior Written Notice." AR40 at 2008.

24. In early February 2010, the Avilas requested G.A. be tested in areas of executive functioning, dyslexia, dysgraphia, visual processing, auditory processing, sequential processing, processing speed, and conceptual processing. On April 12, 2010, the District advised the Avilas in a "Prior Written Notice" that the District was refusing to initiate their requested testing because the District's April 2010 evaluation results provided adequate information to develop an appropriate IEP and Behavioral Intervention Plan. AR40 at 2017.

25. On April 19, 2010, unhappy with the District's evaluation of G.A., the Avilas requested an IEE of G.A. at the District's expense. On May 3, 2010, pursuant to WAC 392-172A-05005(2)(c)(i), the District refused the Avilas' request and initiated a due process hearing with the Washington State Office of the Superintendent of Public Instruction to show that its evaluation was sufficient. The OAH assigned Cause No. 2010-SE-0044 to the District's due process request, and the matter was promptly assigned to ALJ David G. Hansen. Separately, on April 26, 2010, the Avilas also filed a request for a due process hearing with OSPI, OAH assigned Cause No. 2010-SE-0040 to their due process request, and the matter was assigned to ALJ Hansen.

26. As early as November 18, 2006, Barbara Avila, by signature, acknowledged receipt of the District's Procedural Safeguards and Due Process Procedures. AR40 at 1908. The District's August 2005 version of the "Notice of Procedural Safeguards for Special Education Students and Their Families" provided notice of where and how parents were able to participate, receive written notice, obtain an independent educational evaluation, seek mediation, request a due process hearing, receive a manifestation determination meeting, and receive educational records. It also stated where parents could receive additional information. AR40 at 1909-1916.

27. Each document in the record titled "Prior Written Notice" informed the Avilas of the document's purpose; stated the proposed or refused action; gave the reason for the proposed or refused action; provided a description of each evaluation procedure, assessment, record, or report used; described other options considered and rejected; gave reasons why those options were rejected; and listed as an attachment the "Procedural Safeguards and Due Process Procedures," which informed the Avilas of their rights and where they could obtain assistance in understanding the safeguards. *See, e.g.,* AR40 at 1941, 1982, 1985, 2004, 2006, 2008, 2017, 2019, 2022, 2023; AR44 at 415.

///

//

/

## IV. Conclusions of Law

The Court makes the following conclusions of law:

**A. The IDEA Standard and Burden of Proof**

**1.** Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Congress has also indicated that, to receive a FAPE, each eligible student is entitled to an IEP tailored to meet that child's unique needs. *See id.* § 1414(d)(1)(A)–(2)(A).

**2.** An IEP is not a lesson plan and does not provide the specific methodology to be utilized, but it is instead a broad overview or roadmap of a student's special-education program, setting forth the present level of education performance, goals, objectives, and special services and staff to be provided. *See* WAC 392-172A-03090. Under the IDEA, for an IEP to be appropriate it must be "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). "An appropriate public education does not mean the absolutely best or potential-maximizing education for the individual child." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993) (citation omitted). Rather, the state's obligation is to confer "some educational

benefit" – "a basic floor of opportunity" through an "individually designed" program. *Rowley*, 458 U.S. at 200-01.

**3.** In *Rowley*, the Supreme Court articulated the standard for whether a student has been provided appropriate special-education services in terms of whether he or she had been provided a FAPE as follows:

> According to the definitions contained in the (Education for All Handicapped Children Act) a 'free appropriate public education' consists of education instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction. Almost as a checklist for adequacy under the Act, the definition also requires that such instruction and services be provided at public expense and under public supervision, meet the State's educational standards, approximate the grade levels used in the state's regular education, and comport with the child's IEP. Thus, if personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items of the definitional checklist are satisfied, the child is receiving a 'free appropriate public education' as defined by the Act.

*Rowley*, 458 U.S. at 188-89.

**4.** The IDEA contains a number of provisions to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies." 20 U.S.C. § 1415(a). As part of those safeguards, any parent in Washington can obtain an impartial due process-hearing by filing a complaint with OSPI if they believe their child's right to a FAPE has been denied. *See id.* § 1415(f),(h); WAC 392-172A-05025. Moreover, "[a]ny

party aggrieved by the findings and decision" made by the state ALJ has the right to bring a civil action in federal district court. 20 U.S.C. § 1415(i)(2)(A). Accordingly, this Court has jurisdiction over the parties and the IDEA matters in this action.

5.  When a civil action is brought pursuant to the IDEA, the Court "(i) shall receive the record of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on a preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C); *see also Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 890-91 (9th Cir. 1995) (citing former § 1415(e)(2), subsequently recodified as § 1415(i)(2)(C)). Regarding the Court's power to hear "additional evidence," the Ninth Circuit construes the term "additional" to mean "supplemental." *Ojai*, 4 F.3d at 1472-73. District courts must admit additional evidence at a party's request, but only if the evidence is non-cumulative, relevant, and otherwise admissible under the Federal Rules of Evidence. *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist.*, 652 F.3d 999, 1004-05 (9th Cir. 2011). "[A] district court need not consider evidence that simply repeats or embellishes evidence taken at the administrative hearing, nor should it admit evidence that changes the character of the hearing from one of review

1    to a trial *de novo.*" *Id.* at 1004 (quoting *Ojai*, 4 F.3d at

2    1473) (internal quotation omitted).

3  **6.**   In reviewing administrative decisions, the district court

4        must give "due weight" to the state's judgments of education

5        policy. *Rowley*, 458 U.S. at 206 (1982); *Cty. of San Diego v.*

6        *Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th

7        Cir. 1996). In recognition of the administrative agency's

8        expertise, the court "must consider [the agency's] findings

9        carefully and endeavor to respond to the hearing officer's

10       resolution of each material issue." *Id.* (internal quotation

11       marks omitted). Although the district court "is free to

12       determine independently how much weight to give the

13       administrative findings," courts "are not permitted simply

14       to ignore [them]." *Id.* (internal quotation marks omitted). A

15       district court shall accord more deference to administrative

16       agency findings that it considers "thorough and careful."

17       *Capistrano Unified Sch. Dist.*, 59 F.3d at 892.

18  **7.**   Procedural flaws in the IEP process do not always amount to

19       the denial of a FAPE. *W.G. v. Bd. of Trs. of Target Range*

20       *Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992). If a

21       procedural violation of the IDEA is found, the Court must

22       determine whether that violation affected the substantive

23       rights of the parent or child. *M.L. v. Fed. Way Sch. Dist.*,

24       394 F.3d 634, 652 (9th Cir. 2005). "[P]rocedural inadequacies

25       that result in the loss of educational opportunity, or

26       seriously infringe the parents' opportunity to participate

in the IEP formulation process, clearly result in the denial
of a FAPE." *Target Range Sch. Dist.*, 960 F.2d at 1484
(citations omitted).

**8.**     In an action for judicial review of an administrative
decision, the burden of persuasion rests with the party
challenging the ALJ's decision, here the Avilas. *Clyde K. v.
Puyallup Sch. Dist.*, No. 3, 35 F.3d 1396, 1399 (9th Cir.
1994).

**B.     The Avilas' 504 Plan Allegations**

**9.**     Throughout both the proceedings before the ALJ and this
Court, the Avilas make numerous allegations surrounding
G.A.'s 504 Plan. However, as this matter comes before this
Court under 20 U.S.C. § 1415(i)(2)(A), to the limited extent
the ALJ found that he lacked jurisdiction to hear 504
allegations, AR40 at 76 ¶ 12, only the ALJ's decision as to
that jurisdiction determination is before this Court.

**10.**    The Court, having reviewed the record, holds that the ALJ
correctly determined he did not have jurisdiction to hear
the Avilas' 504-related allegations.

**C.     Statute of Limitations**

**11.**    As the Court of Appeals has explained, the IDEA's two-year
statute of limitations is governed by the discovery rule.
*See* ECF No. 131 at 17. Specifically, 20 U.S.C.
§ 1415(f)(3)(C) provides that a "parent or agency shall
request an impartial due process hearing within 2 years of
the date the parent or agency knew or should have known about

the alleged action that forms the basis of the complaint."
*See also* WAC 392-172A-05080. It is often difficult for a
court — from its retrospective position — to determine such
a date. On the one hand, parents should not be "blamed for
not being experts about learning disabilities." *Draper v.*
*Atlanta Indep. Sch. Sys.*, 518, F.3d 1275, 1288 (11th Cir.
2008). On the other, statutes of limitations "serve the
policies of repose, elimination of stale claims, and
certainty about a plaintiff's opportunity for recovery and a
defendant's potential liabilities." *Young v. United States*,
535 U.S. 43, 49 (2002).

12.   The IDEA provides for two statutory exceptions from the two-
year statute of limitations. A parent's claim is not subject
to the statute of limitations if the parent was prevented
from requesting a hearing by "(a) Specific misrepresentations
by the school district that it had resolved the problem
forming the basis of the due process hearing request; or (b)
The school district withheld information from the parent that
was required under this chapter to be provided to the
parent." 20 U.S.C. § 1415(f)(3)(D); *see also* WAC 392-172A-
05080.

13.   The Avilas filed their due process complaint on April 26,
2010, alleging G.A.'s April 2010 IEP was insufficient. AR40
at 327. They subsequently amended the complaint on July 26,
2010, to include additional allegations, including (1) that
the District failed to identify G.A. as a child with a

disability in 2006; and (2) that the District failed to assess G.A. in his suspected disability, autism, in 2006 and 2007. AR40 at 53 ¶ 4c & 5c, 287. The ALJ held that both claims were barred by the statute of limitations because they occurred prior to April 26, 2008, and neither statutory exception applied. AR40 at 76 ¶ 11. This Court did the same in its original Findings of Fact, Conclusions of Law, and Order. ECF No. 116 at 18 ¶ 13, 21 ¶ 19. As the Court of Appeals has explained, this conception of the IDEA's statute of limitations is flawed. *See* ECF No. 131 at 17–18. As such, the Court of Appeals remanded for this Court to make findings as to when the Avilas "knew or should have known about the alleged action[s] that form[] the basis of their complaint." *Id*. at 18.

**14.** The Court concludes that as a matter of law, the Avilas either knew, or should have known, of the alleged actions that form the basis of their complaint by no later than late April of 2008. There were at least three separate evaluations between October 2007 and April 2008 in which a qualified professional diagnosed or identified G.A. as a child with Asperger's Syndrome. First, in October 2007, G.A.'s pediatrician diagnosed him with Asperger's Syndrome. *See* AR40 at 706. Second, in February of 2008, G.A. was placed in BEST, a 5-week treatment program at Sacred Heart Children's Hospital, where one of his discharge diagnoses was Asperger's Syndrome. *See* AR40 at 585–91, 645–47, 690. Finally, on April

25, 2008, the Avilas met with the District to discuss the results of a special-education evaluation, which was conducted at their request. That evaluation identified G.A. as a child with autism. AR40 at 681-691, 701.

15. Any one of these evaluations should have led the Avilas to know of the alleged injuries underlying their claims regarding the District's conduct in 2006 and 2007. *See Draper*, 518 F.3d at 1288 (finding the "knew or should have known date" occurred when parents received evaluation that identified a specific learning disorder, because it gave them facts necessary to know of injury caused by district's misdiagnosis and misplacement of child). Accordingly, at the very latest, the statute of limitations over these claims expired on April 25, 2010 — two years after the date of the Avilas' meeting with the District to discuss G.A.'s evaluation identifying him as a student with autism — although it likely expired in October of 2009, that is, two years after G.A. received a medical diagnosis of Asperger's Syndrome. In any event, the statute of limitations on these claims expired before April 26, 2010, the date the Avilas filed their initial due process complaint. That being the case, the Court declines to address the District's argument that the statute of limitations is properly calculated from the July 26, 2010, the date of Avilas' amended complaint, when they first made these claims. Thus, absent an applicable exception that would toll the statute of limitations period,

the Court concludes that any alleged misconduct prior to April 26, 2008, was not timely raised by the Avilas.

16. The ALJ found that "the District made no misrepresentations to [the Avilas] that they had resolved any problems which formed the basis for the multiple allegations made by [the Avilas]. . . [and] the District did not withhold any information from the [Avilas] that the District was required to provide." AR40 at 75-76 ¶ 11. Having reviewed the record, this Court concurs. The Avilas now assert eight separate reasons that an exception to the statute of limitations was triggered.

17. First, the Avilas claim they never received prior written notice describing the evaluations the District proposed for the October 2006 initial evaluation or a copy of their procedural safeguards. ECF No. 110 at 2. However, the record clearly shows Barbara Avila signed the "Permission for Evaluation" and acknowledged she had received a copy of the eight-page "Procedural Safeguards and Due Process Procedures" notice. AR40 at 1908-16. The Avilas also argue that the document fails as a form of PWN. ECF No. 110 at 2-3. However, as the record demonstrates, AR40 at 671, and the ALJ correctly found, AR40 at 56 at ¶ 1b, the October 2006 evaluation was initiated by the Avilas, not the District. Washington law provides that prior written notice is only required when a school district proposes or refuses "to initiate or change the identification, evaluation, or

educational placement of the student or the provision FAPE to the student." WAC 392-172A-05010(1)(a),(b). No notice is required when the initiated evaluation is at the parents' request. Accordingly, no PWN was necessary and the Court therefore concludes that no necessary information was withheld.

**18.** Second, the Avilas argue the procedural-safeguards notice was never explained to them. ECF No. 110 at 4. However, although the Avilas cite to the OSPI Special Education Technical Assistance Paper, AR40 at 480-93, which advises district personnel "to be prepared to answer questions on procedural safeguards anytime a parent has questions," AR40 at 481, nothing in the IDEA gives the District a duty to affirmatively explain the safeguard notice. *See* 20 U.S.C. § 1415(d) (setting forth the contents of the procedural safeguard notice and requiring only that a copy be available to the parents). Furthermore, even when the school does take action that requires PWN, the notice only need include "[s]ources for parents to contact to obtain assistance in understanding the procedural safeguards and the contents of the notice." WAC 392-172A-05010(2)(e). Here, that was provided. *See* AR40 at 1916. As the District did not have an obligation under the law to explain the procedural safeguards, such an alleged failure, even if true, does not amount to withholding necessary information.

**19.** Third, the Avilas argue the District misrepresented the District's obligations under the IDEA to evaluate G.A. for autism in December 2006, refused to evaluate him for autism, and failed to provide PWN. As a preliminary matter, no PWN was required because the evaluation was requested by the Avilas. AR40 at 671 ("Person making the Referral: Parent"). Further, the reasons for the referral were "Behavior" and that the "teacher wonders if he is showing slight signs of Autism." AR40 at 671. Moreover, the "Special Education Eligibility Determination," dated January 3, 2007, clearly indicates that no eligible category was found and Plaintiff Barbara Avila signed under "I am in agreement" when provided the opportunity to sign "I am not in agreement." AR40 at 672. Accordingly, the Court concludes that no misrepresentation has been proven by the Avilas, as autism was at least a concern; no PWN was required; and that both the District and Ms. Avila agreed with the finding of no eligible category.

**20.** Fourth, the Avilas argue that in December 2007, the District refused to evaluate for autism, and they were not told why. However, the record shows that on December 17, 2007, Barbara Avila signed another "Permission for Evaluation," which resulted in the April 14, 2008 finding of eligibility for special-education services due to the eligibility criteria of autism. AR40 at 681–706. The Avilas were then informed of this in a "Prior Written Notice." AR40 at 1941.

**21.** The Avilas' four remaining arguments relate to the District's alleged conduct after April 26, 2008. The record does not suggest that the District made any misrepresentations or withheld any information during this period. *See* 20 U.S.C. § 1415(f)(3)(D); WAC 392-172A-05080. Moreover, even assuming that the District did so, there is no indication that the Avilas relied on any misrepresentations or withholding of information to the extent of preventing them from requesting a hearing. *Id.*

**22.** Accordingly, the Court concludes that, although the ALJ applied the statute of limitations incorrectly, he reached the correct result: the applicable statute of limitations bars the Avilas' allegations that the District denied G.A. a FAPE by (1) failing to identify him as a child with a disability in 2006; and/or by (2) failing to properly evaluate him for autism in 2006 or 2007. As a result, these claims are dismissed.

**D. Standard for Prior Written Notice**

**23.** The Avilas challenge the ALJ's Conclusion of Law #13, Cause No. 2010-SE-0040, which provides:

> Addressing the remaining allegations of the District having failed to provide prior written notice the undersigned concludes that the District did provide [the Avilas] with adequate written notice complying with the regulations in ISSUES, II, 15b, 19b, 21b, 23b, 27b, 30b, 33b, 34b, 35b, 36b, 37b, 38b, and 39b. It is particularly worth noting that in many of these allegations there was in fact a "Prior Written Notice" provided to [the Avilas] by the District and entered in to the

record at hearing. For example, see ISSUES, II, 33b through 39b.

AR40 at 76 ¶ 13. The Avilas maintain that "adequate written notice" is not the appropriate standard.

**24.** Washington law makes clear that prior written notice, when required, must include:

(a) A description of the action proposed or refused by the agency;
(b) An explanation of why the agency proposes or refuses to take the action;
(c) A description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
(d) A statement that the parents of a student eligible or referred for special education have protection under the procedural safeguards and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
(e) Sources for parents to contact to obtain assistance in understanding the procedural safeguards and the contents of the notice;
(f) A description of other options that the IEP team considered and the reasons why those options were rejected; and
(g) A description of other factors that are relevant to the agency's proposal or refusal.

WAC 392-172A-05010(2). Additionally, the notice must be written in "language understandable to the general public." WAC 392-172A-05010(3)(a)(i).

**25.** Although the ALJ may have included the modifier "adequate" before the words "written notice" the Court concludes that the ALJ, in discussing the PWNs as "complying with the regulations," applied the proper legal standard. Notably, in the immediately preceding paragraph, the ALJ cited to the correct legal requirements for prior written notice, WAC 392-

172A-05010. AR40 at 76 at ¶ 12. Though the District may have argued before the ALJ for some form of adequate notice standard, the ALJ did not apply such a standard in deciding this matter. Accordingly, the single appearance of the word "adequate" does not indicate that the ALJ's findings regarding PWN were based upon anything other than complete and total compliance with all eight requirements of WAC 392-172A-05010.

26. Regardless, as addressed below, when reviewed under the applicable IDEA or 504 legal frameworks, the Avilas have failed to prove any of their PWN allegations.

## E. Prior Written Notice (PWN)

27. Under the IDEA, school districts are required to give parents prior written notice whenever a district proposes or refuses "to initiate or change the identification, evaluation, or educational placement of the student or the provision of FAPE to the student." WAC 392-172A-05010(1)(a),(b) (detailing seven separate components of what a notice must contain); 20 U.S.C. § 1415 (b)(2) (same). Accordingly, no notice is required when the action taken is at a parent's request.

28. In stark contrast to the extensive requirements of a PWN under the IDEA, under a 504 plan, all that is required is some form of notice. *See* 34 C.F.R. § 104.36 (Requiring "a system of procedural safeguards that includes notice" but providing no further requirements for what the notice must contain).

**29.** The Avilas' PWN challenge to the October 12, 2006 Initial Evaluation is barred by the statute of limitations. Alternatively, the Court would conclude that no prior written notice was required for the October 12, 2006 Initial Evaluation because it was initiated at the Avilas' request. *See* AR40 at 671 ("Person making the Referral: Parent"); ECF No. 110 at 6 ("On October 10, 2006, Parents requested child find evaluation.").

**30.** The Avilas' PWN challenge to the December 17, 2007 evaluation is barred by the statute of limitations. Alternatively, the Court would conclude that no prior written notice was required for the December 17, 2007 evaluation because it was initiated at the Avilas' request. *See* AR40 at 671 ("Person making the Referral: Barbara Avila").

**31.** The Avilas' PWN challenge to the October 2007 implementation of aversive therapy is barred by the statute of limitations. Alternatively, the Court would conclude that no prior written notice under WAC 392-172A-05010 was required because the aversive therapy was part of G.A.'s 504 Plan. And to the extent that a 504 plan would require notice, such notice was provided. *See* AR40 at 2056–62.

**32.** The Avilas' PWN challenge to the December 24, 2007 implementation of a Section 504 Plan is barred by the statute of limitations. Alternatively, the Court would conclude that no prior written notice under WAC 392-172A-05010 was required because it was a 504 Plan and not an IEP under the IDEA. To

the extent that a 504 plan would require notice, such notice was provided. *See* AR40 at 829-31 (noting the Avilas' agreement to the 504 Plan and providing them notice of their rights under 504).

33. The Avilas' PWN challenge to the removal of G.A.'s 504 Plan is barred by the statute of limitations. Alternatively, the Court would conclude that no prior written notice under WAC 392-172A-05010 was required because it was a 504 Plan and not an IEP under the IDEA. To the extent that a 504 plan would require notice, such notice was provided. *See* AR40 at 1076.

34. The Avilas' PWN challenge, asserting the District must use PWN to consider the BEST program recommendations, is barred by the statute of limitations, as the BEST program recommendations were produced — and the initial IEP created — prior to April 26, 2008. Alternatively, even if the District did refuse to consider the BEST program recommendations, that refusal would not have triggered a legal obligation to issue a prior written notice under WAC 392-172A-05010. The District, in refusing to take a course of action, only need provide prior written notice when refusing to initiate or change "the identification, evaluation, or educational placement . . . ." WAC 392-172A-05010. Here, the BEST program recommendations were an outside report, initiated by the Avilas and not the District. If unutilized in constructing the IEP, this would not be an

initiation or a change by the District, and therefore no prior written notice would be required. By contrast, if the District wanted to change the evaluation it was proposing to conduct, then prior written notice would be required. For example, in February 2010, the District wanted to change the G.A.'s academic assessment from the Woodcock Johnson Test of Achievement (WJ-III) to the Wechsler Individual Achievement Test (WIAT-II), and consistent with the requirements of WAC 392-172A-05010, the District provided prior written notice. AR40 at 2008. Such notice was not required with the BEST program recommendations. Regardless, the evaluation report, AR40 at 681-91, in which the Avilas agreed, AR40 at 693, clearly indicated the BEST program's diagnoses were in fact considered. *See* AR40 at 690 (noting the "discharge diagnosis from the BEST Program (Date: 3/17/08) with Asperger's Syndrome and Anxiety NOS. Medication was recommended at BEST and parents have declined."). Accordingly, the Court concludes that the Avilas' BEST-program-related allegations are barred by the statute of limitations and, in the alternative, have no basis in fact or law.

**35.** The Avilas' PWN challenge, arguing the District failed to provide PWN addressing all of the Avilas' concerns from each of the May, October, November, and December 2008 meetings discussing the proposed IEP, is without merit. As previously discussed, when a district refuses to take action, PWN is only required if that refusal is regarding the

"identification, evaluation, or educational placement." WAC 392-172A-05010. Throughout the 2008 meetings the Avilas raised concerns and questions regarding the IEP, but nothing in the record suggests that the District refused to identify G.A. as eligible for an IEP, changed which evaluation the District was performing without notice, or refused a change in education placement. The IEP at issue at all times identified G.A. as eligible for special-education services and placed him in the ADAPT program. The Avilas maintain that "not one single documentation of Parent concerns, no document of Parent's refusal to sign their IEP's . . ." exists. ECF No. 110 at 26. Such documentation may have been beneficial to the Avilas, but it is not a form of PWN required by WAC 392-172A-05010.

36. The Avilas' PWN challenge, arguing the District had to provide PWN regarding the August 2008 accommodation recommendations from the private occupational therapist, is without merit. As with the BEST-program recommendations discussed previously, the occupational-therapist recommendations do no implicate either an initiation or a change to "the identification, evaluation, or educational placement of the student or the provision of FAPE to the student." WAC 392-172A-05010. Accordingly, the District had no obligation to provide PWN under WAC 392-172A-05010.

37. The Avilas' PWN challenges, alleging the District failed to provide proper PWN when the District rejected their request

to keep a one-on-one aid, to have related services for the school psychologist, to have speech as a related service, and to have G.A. evaluated for Dyslexia and Dysgraphia, are entirely without merit. The record contains two PWNs, both labeled "Prior Written Notice," in which the documents address each of the required components outlined in WAC 392-172A-05010. *See* AR40 at 1985 (rejected a one-on-one IA); AR40 at 2017 (refusing to initiate the Avilas' requested evaluations and related services).

38. Ultimately, the Avilas raised numerous alleged PWN violations before both the ALJ and this Court. This Court finds no such violations, as either no PWN was required or PWN was provided. Even if a procedural violation did occur, the Avilas have failed to prove by a preponderance of evidence that the procedural inadequacies amounted to a denial of FAPE because the Avilas have failed to show that any procedural inadequacies impeded G.A.'s right to a FAPE, significantly impeded the Avilas' opportunity to participate in the decision-making process regarding the provision of a FAPE, or caused a deprivation of educational benefits to G.A. *See* 20 U.S.C. § 1415(f)(3)(E)(ii); *Target Range Sch. Dist.*, 960 F.2d at 1484. Accordingly, all of the Avilas' PWN allegations are dismissed.

**F. Manifestation Determination**

39. The Avilas assert that the District could perform a manifestation determination "anytime a child exhibits

maladaptive behaviors." ECF No. 110 at 31. However, as the ALJ correctly concluded, AR40 at 77 ¶ 18, the law in Washington is quite clear on the requirements upon the school.

**40.** Under both WAC 392-172A-05155 and 392-172A-05145, a manifestation determination is not required until ten school days have been missed either consecutively or in a pattern of removals.[6] It is not until "[a]fter a student has been removed from his or her current placement for ten school days in the same school year" that the school district "must provide services." WAC 392-172A-05145(2)(b).

**41.** Here, G.A. was suspended for a total of only six school days across the 2007–2008 and 2008–2009 school years. Accordingly, while the Avilas clearly wanted the District to perform a manifestation determination, and the Avilas are correct that schools can perform a manifestation determination anytime a child exhibits maladaptive behavior, ECF No. 110 at 31 (emphasis removed), the law does not require the District to do so until a student is suspended for ten school days in a

---

[6] *See* WAC 392-172A-05155(1) ("(a) The removal is for more than ten consecutive school days; or (b) The student has been subjected to a series of removals that constitute a pattern: (i) Because the series of removals total more than ten school days in a school year; (ii) Because the student's behavior is substantially similar to the student's behavior in previous incidents that resulted in the series of removals; and (iii) Because of such additional factors as the length of each removal, the total amount of time the student has been removed, and the proximity of the removals to one another."). *See also* WAC 392-172A-05145(2)("School personnel may remove a student eligible for special education who violates a code of student conduct . . . for not more than ten consecutive school days . . . and for additional removals of not more than ten consecutive school days in that same school year for separate incidents of misconduct as long as those removals do not constitute a change of placement under WAC 392-172A-05155.")

single year. Accordingly, the District had no legal obligation to provide a manifestation determination of G.A. Therefore, the Avilas' manifestation determination claims are dismissed.

**G.   2006 and 2007 Evaluations**

42. As the Court previously concluded, the Avilas' claims regarding the District's alleged failure to identify G.A. as a child with a disability in 2006 and to properly evaluate his disability in 2006 and 2007 are barred by the statute of limitations.

**H.   2010 Reevaluation and Sufficiency of the 2010 IEP**

43. The purpose of an evaluation under the IDEA is to determine whether a child has a disability as well as the nature and extent of the special-education and related services that the child needs. 34 C.F.R. § 300.15; WAC 392-172A-01070.

44. Reevaluations under the IDEA are to determine a student's continuing eligibility for special-education services and related services, or the nature of those services, and are to be conducted in accordance with WAC 392-172A-03020 through WAC 392-172A-03080; WAC 392-172A-03015.

45. The evaluation and reevaluation procedures are detailed at WAC 392-172A-03020. A school district must, among other things, employ a "group of qualified professionals" who in turn utilize a "variety of assessment tools and strategies to gather relevant functional, developmental, and academic information" about a student. WAC 392-172A-03020(2). A

district cannot "use any single measure or assessment as the sole criterion . . . for determining an appropriate educational program for the student." WAC 392-172A-03020(2)(b). Any assessments or evaluation materials used to assess a student must be "used for the purposes for which the assessments or measures are valid and reliable." WAC 392-172A-03020(3)(a)(iii). Assessments and evaluation materials are to be administered by "trained and knowledgeable personnel" and administered "in accordance with any instructions provided by the producer of the assessments." WAC 392-172A-03020(3)(i)(iv)(v). Assessments and evaluation materials are to be "tailored to assess specific areas of educational need." WAC 392-172A-03020(3)(b). Lastly, in evaluating a student to determine continued eligibility for special-education services a district shall ensure that "the evaluation is sufficiently comprehensive to identify all of the student's special-education and related services needs, whether or not commonly linked to the disability category in which the student has been classified." WAC 392-172A-03020(3)(g).

46. Part of the reevaluation process requires the IEP team to review existing evaluation data, including "[e]valuations and information provided by the parents of the student; current classroom-based, local, or state assessments and classroom-based observations; and observations by teachers and related services providers." WAC 392-172A-03025(1).

Having conducted such a review, and with information provided by the parents, the IEP team makes a determination in the case of a reevaluation, of "whether the student continues to meet eligibility, and whether the educational needs of the student including any additions or modifications to the special-education and related services are needed to enable the student to meet the measurable annual goals set out in the IEP of the student, as appropriate, in the general education curriculum." WAC 392-172A-03025(2)(a)(ii).

47. The parents of a student who is eligible for special-education services has the right to request an Independent Educational Evaluation, either at their own expense, or at the expense of the district. WAC 392-172A-05005(1). Under certain circumstances, a parent also has the right to an IEE at public expense if the parent disagrees with an evaluation conducted or obtained by a district. WAC 392-172A-05005(2). Should a parent request an IEE at public expense, a district must do one of two things: either initiate a due process hearing to show that its "evaluation is appropriate," or ensure that an IEE is provided at public expense without unnecessary delay. WAC 392-172A-05005(c). If at a due process hearing a district establishes that its evaluation is appropriate, the parent still has the right to obtain an IEE, but not at the District's expense. WAC 392-172A-05005(3).

48. The Court notes that the ALJ's considerations addressing the 2010 reevaluation and 2010 IEP were thorough and careful.

1     Therefore, the Court gives the ALJ's findings substantial

2     deference.

3  **49.**  The Court concludes that the Avilas did not prove by a

4     preponderance of evidence that the District's April 2010

5     reevaluation of G.A. was inappropriate, nor that a

6     neuropsychological examination at public expense by a

7     provider of their choice was necessary for the reevaluation

8     to be appropriate.

9  **50.**  Additionally, the Court concludes that the Avilas did not

10    prove by a preponderance of evidence that the April 2010 IEP

11    failed to provide G.A. with a FAPE. To the contrary, the

12    preponderance of the evidence establishes that the April 2010

13    IEP was reasonably calculated to provide G.A. with a

14    meaningful educational benefit through an individually-

15    designed program. Further, the program did, in fact, provide

16    G.A. with such benefit and opportunity. The April 2010 IEP

17    provided appropriate behavioral interventions, supports, and

18    strategies, including a Behavioral Intervention Plan and a

19    Functional Behavior Assessment.

20 **51.**  Finally, the Court concludes that the preponderance of the

21    evidence affirmatively establishes that the April 2010 IEP

22    provided G.A. with appropriate accommodations, including

23    shortened assignments; material read orally; extra time in

24    completing assignments; scheduled breaks every one to one-

25    and-a-half hours; additional breaks when determined

26    appropriate by staff; extra time on tests and quizzes; breaks

during work, between tasks, and during testing; individualized and small group instruction; modified, repeated, and model directions; isolated testing locations; permission to orally respond to assignments and tests; permission to dictate to a scribe; permission to use a tape recorder; a behavior plan; sensory regulation items available as needed; and an assistive technology specialist to determine G.A.'s needs. In addition to these accommodations — and at the Avilas' request — the District prepared a nearly two-page, type-written, single-spaced list of accommodations to be provided to the G.A. throughout the school day.

**52.** Accordingly, the Avilas' claims regarding the 2010 Reevaluation, 2010 IEP, and need for an IEE at public expense are dismissed.

**I.   Impartial Hearing before an Impartial Hearing Officer**

**53.** The Avilas raise a number of issues that they maintain denied them a fair and impartial hearing before an impartial hearing officer, including (1) gaps in the audio recordings of the administrative hearing, (2) a lack of reference to their post-hearing brief in the final decision or the official record, (3) the ALJ's refusal to admit their additional evidence, (4) the ALJ's lack of acknowledgement of their request for judicial notice, and (5) the ALJ's refusal to hear evidence of the District's routine habits and procedures. ECF No. 110 at 35–36 (also noting the Avilas' withdrawal of objections to credibility determinations).

**54.** The IDEA confers on disabled children and their parents the right to have complaints resolved at a full adversarial hearing regarding the "identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1). The hearing must be before an impartial hearing officer under the auspices of the relevant state or local educational agency. *Id.*

**55.** First, the Court having reviewed the record, finds no error in the ALJ's evidentiary determinations, including his refusal to admit evidence not submitted within the five-day requirement of WAC 392-172A-05100, routine habit and procedures evidence, and his decision to not take judicial notice at the Avilas' request.

**56.** Additionally, because this matter was remanded to the ALJ for consideration of the Avilas' post-hearing brief — which the ALJ found it had considered at the time of its original decision, ECF 70 at 5 — the Avilas' concern that it was not originally in the certified official record is moot. Although the Avilas object that it was not referenced in the final decision of the ALJ, they have failed to prove how the mere lack of a citation to their brief in the ALJ's decision constitutes evidence that they did not receive a fair and impartial hearing. The Court is not aware of any legal requirement, nor do the Avilas cite to one, that the ALJ must

cite to every document filed by a party over the course of the entire administrative hearing proceedings.

57.   While there may have been technical difficulties with the audio recordings of the administrative hearing proceedings, full transcripts were available. Regardless, any failure of the audio recordings or alleged inability on the Avilas' part to cite to a written transcript in drafting their post-hearing brief did not deny them the right to present to — and receive consideration from — a fair and impartial hearing officer. Specifically, the ALJ heard and fully considered the testimony of Ms. Herzog. Accordingly, even if true, the Avilas' concern with their ability to cite to her testimony did not deny them a fair and impartial hearing.

58.   Ultimately, the Court concludes that the Avilas have failed to prove by a preponderance of the evidence that they failed to receive a fair and impartial hearing before an impartial hearing officer. The Court can find nothing in the record, or the arguments presented by the Avilas, that suggests the ALJ's impartiality was in any way questionable or that the extensive hearings conducted were in any way unfair.

### V.   Conclusion

The Court has considered all of the Avilas' arguments. Any arguments that the Court did not address have been duly considered but ultimately found unpersuasive. In conclusion, the IDEA does not require a school district to maximize its effort and resources on any single student; it instead only requires a district provide a basic floor of

opportunity for all students, using individualized education programs as necessary. *See Ojai*, 4 F.3d at 1474 ("An appropriate public education does not mean the absolute best or potential-maximizing education for the individual child."); *Rowley*, 458 U.S. at 200-01 (noting the state's obligation is to confer "some education benefit" or "a basic floor of opportunity" through an individualized program). Having reviewed the extensive record before it and the arguments proffered by both parties, the Court concludes that the District met this obligation.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.**

2.    The Clerk's Office is directed to enter **JUDGMENT** in Defendant's favor with prejudice.

3.    The Clerk's Office shall **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel and the Avilas.

**DATED** this _29th_ day of January 2018.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge